SCHOTT, Judge.
This is a personal injury claim arising out of a near-fall by plaintiff when she stepped into an open drain in the ladies’ restroom of Shoney’s restaurant. The jury found that both parties were at fault, attributed sixteen percent of the fault to plaintiff, and fixed the quantum of damages at $2,500. Pursuant to the verdict, the judge awarded plaintiff $2,100 subject to a credit of $2,000 which the parties stipulated had been paid for plaintiff’s medical expenses. Plaintiff has appealed and contends the jury committed manifest error by charging her with comparative fault and failing to compensate her for injuries she sustained subsequent to the incident in the restroom but which she contends resulted from this initial incident.
Plaintiff and her husband were breakfast customers at Shoney’s on February 8,1984. She went to the restroom where she used the toilet facilities and washed her hands. *340 After drying them she turned toward the door and stepped into a drain whose cover was missing. She fell to the side but she was able to avoid falling to the floor.. She reported this to the manager who went into the restroom and found the drain cover in a toilet stall across the room. The cover was supposed to be fastened with two screws but these were missing.
Shortly afterward plaintiff felt pain in her right foot, leg and hip. On February 10 she consulted her family physician Dr. Russel Rawls. Upon examination he diagnosed a sprain of the hip and contusion or sprain in her right ankle and foot. He recommended rest and heat applications. She returned on February 13 with an additional complaint of tenderness in her left knee. Rawls diagnosed a sprained knee and thought she was improving. On February 18 she returned and reported she had fallen in her front yard injuring her left arm. On examination Rawls diagnosed a fracture of two bones in her left arm and swelling in the right ankle and foot. He referred her to Dr. Cashio, an orthopedic surgeon, for treatment of the arm.
Dr. Cashio did not testify, but plaintiff testified that he treated her for eight or nine months. He put her arm in a long cast and prescribed physical therapy and medication. Because she felt she was not improving under his care she consulted another orthopedist, Dr. Fleming. Dr. Ca-shio’s bill indicates he saw her from February 21 until May 15, 1984.
Dr. Fleming did not testify either, but he treated plaintiff over a long period of time for her left arm and right leg problems as well as other ailments unrelated to the case. Plaintiff testified that she continued over this period of time to be unsteady on her feet and in November, 1986 fell down causing injury to her right arm. She went to Dr. Fleming’s office after this fall and in his absence was seen by his associate Dr. Norm Klainer, also an orthopedist. He diagnosed a fracture of the wrist, applied a splint, and recommended that she consult with Dr. Fleming upon his return.
In her first specification of error plaintiff contends the jury erred in finding that she contributed sixteen percent of the fault to the accident. She established there was a defect on the restroom floor consisting of an unguarded drain. After engaging in the use of the restroom facilities she stepped in this hole and suffered injury. We cannot conceive of any basis to charge her with contributory fault. If the jury had assigned one hundred percent of the fault to her we might feel compelled to affirm since this would necessarily indicate that the jury thought this was an obvious defect she should have seen. But any supposed duty on her part to see the defect was necessarily rejected by the jury when they returned a verdict in her favor. The allocation of a degree of fault to the plaintiff in this case is inconsistent with its facts. Since this part of the verdict is manifestly erroneous the judgment will be amended to delete the allocation of any degree of fault to plaintiff.
The more serious problems in the case are related to quantum. In deciding upon the . award of $2,500 the jury must have concluded that there was no causal relationship between the fall in the restaurant and either of the subsequent falls. With respect to the fall of February 18 in which she broke her left arm, the evidence clearly connects it to the first fall and the jury committed manifest error in reaching an opposite conclusion.
At the time of her second fall, plaintiff was Dr. Rawls’ patient. All the other physicians involved in the case treated plaintiff later on. She had sprained her ankle and hip on February 8 and had this second fall just ten days later. Dr. Rawls testified unequivocally that her ankle joint was weakened and there was a causal relationship between the initial injury and the second fall. This testimony was uncontradict-ed as was the testimony of plaintiff and her husband that she had no history of falls before the February 8 accident.
While we find that plaintiff is entitled to recover damages from the second fall we do not find support for her argument that the November, 1986, fall was caused by her initial injury. In order to address this issue we must first consider an independent *341 issue raised by plaintiff out of the trial court’s alleged failure to continue the trial at her request when Dr. Fleming failed to appear.
The record does not disclose that plaintiff moved for a continuance or that she lodged any objection in this connection before the case went to the jury. On the contrary, counsel for plaintiff was asked if he had anything else to present and he replied in the negative. Consequeñtly, there is no basis for plaintiffs complaint that she was improperly denied a continuance. The record does show that plaintiff filed a motion for a new trial supported by proof that Dr. Fleming was on his way to the trial when he was caught in a monumental traffic jam which prevented him from getting to the courthouse. However, the trial court’s refusal to grant a new trial was not an abuse of discretion under these circumstances where there had been a two-day jury trial, no motion for continuance was made before the case went to the jury, and it is arguable that Dr. Fleming’s testimony would have been cumulative anyway.
The final question is whether the jury erred in its apparent conclusion that plaintiff’s fall and injury in November, 1986 was not the result of her initial fall. She testified that she had no history of falling before the first one and had the problem thereafter. She began seeing Dr. Fleming in 1984 after being treated by Dr. Cashio for several months. After the fall in November, 1986 she saw Dr. Klainer, an orthopedist and an associate of Dr. Fleming, because Fleming was away at the time. Klainer expressed the opinion that the first fall and ankle injury left plaintiff with “laxed ligaments” which caused her ankle to be unstable and made her vulnerable to falls. However, on cross examination he stated that he had “not yet” performed tests which could confirm his opinion of “laxed ligaments”. Furthermore, he acknowledged that his file on plaintiff contained a March, 1985 letter from Dr. Fleming stating there was no instability of the right ankle compared to the left. His testimony concluded as follows:
Q Would it be your opinion and reasonable certainty something happened between March 22nd and when you saw her for the first time in late ’85 that could have caused this instability, your finding?
A What you are saying is true or could be absolutely false. It is your speculation against my speculation. What I’m trying to say, when I examined the leg, she is a very apprehensive lady, very nervous and I wouldn’t perform a stress test on her without heavy sedation. So examining the ankle is tricky on this lady because she has a very low tolerance of pain. When examined her and she was mainly hurting, the wrist, the ankle gives way, that was my impression.
Q What I’m trying to find out, your partner, an orthopedist you work with, he has a different evaluation of that ankle some ten months earlier, did he not?
A Yes.
Since the evidence does not establish with a reasonable degree of certainty that the first fall caused the 1986 fall, the jury’s conclusion that she is not entitled to a recovery against defendant for damages resulting from the 1986 fall is not clearly wrong.
The trial court’s award for general damages was equivalent to $100. This is so because defendant’s payments of $2,000 for medical expenses was credited against the award of $2,100. This constitutes an abuse of the court’s discretion and requires correction on appeal. Plaintiff’s initial injury consisted of sprains and strains of the ankle, leg, and hip. Her fall at home on February 18 caused a fractured arm which in turn caused a considerable degree of inconvenience and pain and perhaps some financial loss. She was handicapped in her work on a farm she and her husband owned and worked and in her avocation of raising pedigree dogs. We conclude that an award of $10,000 for general damages is proper as the lowest amount in the range of the jury’s discretion for plaintiff’s injuries.
*342 Accordingly, the judgment appealed from is amended to increase the amount of the judgment to $12,000 subject to a credit of $2,000 already paid to plaintiff. The finding that plaintiff was at fault is reversed. There is judgment in favor of plaintiff, Geraldine Benandi, and against defendants Shoney’s Inc. and New Hamshire Insurance Group, in the sum of $10,000 with legal interest from date of judicial demand until paid and for all costs of these proceedings including the cost of this appeal.
AFFIRMED IN PART; REVERSED IN PART; AND AMENDED.